UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>        Plaintiff )<br>                  )<br>    vs.                 )<br>                  )<br>NATHANIEL McELROY, )<br>        Defendant )  | No. 17 CR 000576-1<br><br>Honorable Jorge Alonso |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant **NATHANIEL McELROY** respectfully requests that this Honorable Court impose a sentence of 21 months imprisonment on each of the two counts for a total of 42 months, which is at the low end of the sentencing guideline range of 41 to 51 months incarceration. In support of this request, NATHANIEL McELROY respectfully submits the following Memorandum for the Court's consideration. NATHANIEL McELROY contends that a sentence at the low end of the guideline range is supported by the factors set forth in 18 U.S.C. 3553(a) and would be "sufficient but not greater than necessary" to achieve the statutory sentencing goals.

NATHANIEL McELROY was only 18 years old when he was arrested and charged in this matter. The only criminal cases which give rise to any criminal history points are both small cannabis cases, offenses which would not be illegal under state law today. This demonstrates that his criminal history category of II is an inaccurate reflection of his actual criminal conduct over his life, and that he should fall under Category I . He has no felony arrests or convictions whatsoever.

For most of his, now, 21 years, even as a child, NATHANIEL McELROY has been forced to go it alone. He grew up largely in the Englewood neighborhood of

Chicago. After the shooting and death of NATE's young friend, his mother sent him to live with relatives in Iowa. That move, though difficult, may have saved NATE's life.

The circumstances of the offense and guideline provisions are not in dispute. NATHANIEL McELROY was permitted to enter a plea of nolo contendre in this matter. He does not contest that the government would be able to prove all facts in the charged counts beyond a reasonable doubt. Of course, McELROY has another currently pending case under 18 CR 728 for which he is currently detained.

## LEGAL STANDARD

The Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), has dramatically changed the procedure for sentencing in Federal Court. The proper procedure for sentencing now requires sentencing courts follow four principles. First, the District Court must correctly calculate a defendant's Guidelines range. *Gall v. United States*, 128 S.Ct. 586, 602 (2007). Second, the District Court must apply 18 U.S.C. §3553(a) and the parsimony principle. *Id* at 602. See also *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007). Third, the Court, when determining which sentence is just and proper, cannot presume that the Guidelines are reasonable. *Nelson v. United States*, 129 S.Ct. 890 (2009); *Gall*, 128 S.Ct. at 596-97. In fact, courts cannot require an extraordinary reason or even a "good reason" to deviate from the Guidelines under the §3553(a) factors. *United States v. Ross*, 501 F.3d 851 (7th Cir. 2007). Fourth, the judge may impose a sentence below the guidelines range based on a policy disagreement with a particular Guideline, even in an ordinary case. *Spears v. United States*, 129 S.Ct. 840, 841 (2009).

2

The primary directive in §3553(a) is that this Court must impose a sentence that is "sufficient, but not greater than necessary," to satisfy established sentencing objectives. 18 U.S.C. §3553(a). These sentencing objectives specifically set forth in §3553(a)(2), require this Court to impose a sentence based on careful consideration of the need to: (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, (4) afford adequate general deterrence, (5) protect the public from further offenses committed by the defendant, and (6) provide the defendant with needed treatment and training in the most effective manner.

In addition to the purposes of sentencing, §3553(a) requires this Court to consider the following additional factors: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the kinds of sentences available, (4) the sentencing guidelines range, (5) pertinent guidelines policy statements, (6) the need to avoid unwarranted sentencing disparities, and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a) (1), (3)-(7). Significantly, the Supreme Court emphasized in *Booker* that under the Sentencing Reform Act, no limitation should be placed on the information concerning the background, character, and conduct of a person convicted of an offense that a court may receive and consider for the purpose of imposing an appropriate sentence. 125 S.Ct. at 759 (citing 18 U.S.C. §3661).

As explained below, based on the sentencing factors set forth in 18 U.S.C. §3553(a), **NATHANIEL McELROY** is a good candidate for a sentence at the low end of sentencing guideline range. Such a sentence would be "sufficient, but not greater than necessary" to effectuate the statutory sentencing goals.

## **GUIDELINE RANGE**

NATHANIEL McELROY has entered a plea of nolo contendre to the two count indictment that he faces. Defendant also agrees to the entry of a forfeiture judgment.

According to the Presentence Investigation Report, NATE has a combined adjusted offense level of 24. He receives 2 points off for acceptance of responsibility plus the additional one point with the base offense level over 16 resulting in a Total Offense Level of 21. NATE has 2 criminal history points, placing him at the bottom of Category II. After making the appropriate adjustments for Acceptance of Responsibility and timely notification to the government of his intent to plead guilty, the advisory guideline range based on an adjusted offense level of 21 is a sentence of 41 to 51 months imprisonment. For the reasons set forth below, NATHANIEL McELROY respectfully requests that a sentence of *21 months* be imposed on each count to run consecutively for a total sentence of **42 months**.

The probation officer concurs that the sentencing guideline range is 41 to 51 months for both offenses in that counts 1 and 2 are grouped for guideline calculation purposes. USSG §3D.2(d).

Though Defendant acknowledges that his two cannabis convictions each carry with them one criminal history point, he argues that each of these offenses would not be considered illegal in Illinois today under most circumstances. Therefore, NATE's criminal history Category of II greatly overstates his criminal history. Defendant acknowledges that he was under 21 at the time of those offenses. However, Defendant implores this Court, under §3553, to consider him as a Category I rather than Category II. This would change his guideline range from 41 to 51 months to 37 to 46 months.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

**1. The Offense**

The nature of the instant offense is not in dispute. NATHANIEL McELROY has never denied responsibility for the offense since initially confronted in this case. In examining the nature of the offense, this Court should not overlook the fact that NATHANIEL McELROY is not accused of using a weapon himself under any circumstance. This fact in no way justifies his actions but shows that NATE was not moved to purchase the weapons to specifically attack any person. However, the government could prove facts that would establish that he trafficked in weapons.

McELROY stumbled upon the veritable advertising of Reginald Johnson on Facebook, and thereby became a gun trafficker. There is no evidence that he was seeking out guns to purchase or distribute.

Upon his initial arrest, NATE was cooperative with the agents. In fact, he gave a nearly 5-hour statement to law enforcement upon his arrest. He answered all questions posed to him. He identified photos he was requested to identify. He readily admitted his criminal conduct.

This Court and all citizens of our community are aware of the scourge of guns in Chicago. NATE was living in the Elgin area at the time of his arrest. He committed the crime in Calumet City, Illinois. He never intended to bring the weapon into the City of Chicago. Defendant's crime should not be connected to the serious weapons problem that the city is currently experiencing.

Though NATE has expressed his responsibility for his actions in this case, it should be noted that the initial contact with NATE to purchase the weapons was made by

5

co-defendant Reginald Johnson when Johnson sent out, what was essentially, an advertisement on Facebook to buy guns for people . This in no way obviates Defendant's acknowledgement that the government could prove Defendant's guilt, however, the fact that NATE did not initiate the transaction should be used by this Court as mitigating factor. Additionally, when NATE was approached by Individual A, working for the government, NATE could've taken the opportunity to sell guns to Individual A, himself, for profit, but instead just passed him on to Reginald Johnson and LaShon Moore in Michigan. NATE never profited from the sale or transfer of any weapons.

2. Sentencing Disparity

Reginald Johnson pled guilty to Counts I and II of the indictment. Though he was a Category III in terms of criminal history with a guideline range of 78 to 97 months, this Court sentenced him to 54 months. LaShon Moore, a Category V, whose sentencing range was 210 to 262 months, was sentenced to the maximum of 120 months.

In this case, NATHANIEL McELROY, was the least culpable among these three co-defendants and he had the least significant criminal history. Given that Johnson and Moore were sentenced to 54 months and 84 months respectively, a sentence of 42 months is "sufficient but not greater than necessary" to effectuate the goals of sentencing.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

1. Family

Notably, NATE was a very young man when he was arrested in this matter nearly three years ago on September 1, 2017, a day his life changed forever. On that date, he was approximately 6 feet tall and weighed about 190 pounds. Now, he has grown a couple inches, and he weighs nearly 230 pounds. He is not fat, mind you. In his words to

6

the probation officer, he became "grown in here". And he did. NATE entered this case a boy and now faces this Court as a man.

NATE is extremely close to his mother, grandmother, sisters, and brothers. He has attracted large groups of family members at court appearances in his other matter, including his grandmother, who is wheel-chair bound.

NATE is privileged enough to have a strong, close-knit family. He stated to probation that he "loves all his siblings". PSR p. 15, para. 69. Many of them appear in court to support him. The PSR details NATE's significantly difficult childhood growing up in the crime-ridden streets of Englewood. Yet he clung to his family for support throughout that difficulty.

When NATE was about 5 years old, his best friend was shot and killed in his presence. This was a pivotal instant for NATE, one that changed him forever. He was sent to live with relatives in Iowa. That time was not easy either, and, as an outsider, he was not treated well. PSR p. 15, para. 71.

Most notably is NATE's relationship with his son, Kawaii McElroy, age 4, who currently resides with NATE's mother, Jerrisina. NATE was Kawaii's primary custodian since his birth. When Kawaii's mother became pregnant, NATE originally did not want to keep the child. However, Kawaii's mother wanted to continue the pregnancy, but "took off" soon after the baby was born. PSR p. 15, para. 73. NATE raised Kawaii since that point as a single father. NATE's incarceration and unavoidable separation from Kawaii is a collateral punishment that this Court should not discount, both from the perspective of father and son.

Overall, NATE's strong family ties are good indicator of his success upon his

7

release from custody. Strong family connections and support have been shown to have a great positive effect on reducing recidivism. Prisoner Reentry and Crime in America, Jeremy Travis, Christy Visher, Cambridge University Press, Aug. 1, 2005, at p. 215.

2. **Employment**

Even though NATE was only 18 at the time of his arrest in this matter, he has already amassed an impressive resume. At the time of his arrest, he was working 20 hours a week for All American Movers in Elgin, Illinois. He worked for Portillo's in 2016 for 40 hours a week, and Hardee's for 40 hours a week. NATE is a young man who is not afraid to work hard and knows what it means to work to support his family. This quality will serve him well in his future.

3. The RICO Case

NATE also faces charges for a RICO case in 18 CR 728. In that matter, four other co-defendants are charged in a RICO case involving gang activity and several murders. NATHANIEL McELROY is not accused of committing any shooting or murder in that case. In fact, all of the other defendants in that matter could potentially face the death penalty, while NATE does not. His alleged role in that matter is far smaller than that of the other defendants. His role in that matter is really limited to the acts that are alleged in this case and for which NATE has pled nolo contendre.

4. **Drug Use**

By the time he was very young, NATHANIEL McELROY was using marijuana regularly. This habit continued throughout the next several years when he eventually began using other drugs such as cocaine and ecstasy. Recent studies have shown that marijuana use during that age has profound effects on the brain. See American

[Psychological Association Article - Marijuana and the Developing Brain, November 2015.](#) Defendant tested positive for cannabis and cocaine at the time of his arrest.

NATHANIEL McELROY *requests* that this Court sentence him to drug rehabilitation during his incarceration understanding he may not have time to complete such a program inside. He also agrees to drug treatment as a condition of supervised release.

### **DEFENDANT'S CRIMINAL HISTORY**

NATHANIEL McELROY's criminal history is minimal because only 18 at the time of his arrest in this matter. As mentioned above, but for his two misdemeanor cannabis convictions, NATE would have no criminal history points whatsoever. He has no violence in his background at all.

### **RECOVERY AND THE IMPACT OF INCARCERATION**

Until his arrest in this case, NATE had never been away from him family for any significant period of time. During his time at the MCC, NATE has communicated regularly with his mother, son, sisters, grandmother, and other family members. He maintained diligent communication with his counsel, and he has been thoroughly engaged in his case.

Counsel has been fascinated to witness the personal growth of NATHANIEL McELROY first hand. He has been privileged to witness the growth of a boy to a man in the most difficult circumstances. At one point, NATE was "cellies" with another of Counsel's clients, an older, more experienced inmate. These co-existing relationships allowed Counsel to view NATE's growth and development both first and second-hand.

Consequently, this has been one of the most unique attorney-client relationships in counsel's career.

In his presentence interview, NATE was also able to show the probation officer, and therefore this Court, that he is a kind, caring soul. He is not just a good, but a great, amazing father. It would be a service to NATE, his son, and the community for NATE to be returned to his family as soon as possible. His incarceration has only reaffirmed how much his family and children mean to him.

NATE had never been incarcerated until he was locked up in this case on September 1, 2017, nearly three years ago today. During most of that time, he was housed in the MCC as a separatee. This fact prevented him from participating in many educational opportunities while incarcerated. NATE has very much desired to obtain his GED, and he pledges to do so one day. He also wanted to work in order to be productive with his time in jail but could not do so. He continually requested that he be taken off separatee status so he could participate in rehabilitative activities but was never answered.

Having one's freedom yanked away at the young age of 18, only to learn the hard knocks of life incarcerated in Chicago's MCC is a tough punishment for the crime for which NATE stands convicted. He has paid a significant price for his crime, nearly 3 long years of jail. He truly will never be the same but hopes that someday he will become a better man than the boy he entered as.

## **CONCLUSION**

NATHANIEL McELROY possesses a positive attitude about his future not often seen in incarcerated inmates. This is an amazing quality because this incarceration has

been very traumatic to this young man. This can be attributed to his strong devotion to his family and his son. Upon arrest, NATE immediately accepted responsibility for his actions. His priority now is to recover from this trauma, learn from it, and return to his family. His criminal history shows a person who, at a young age, was pulled away from his family as a result of their drug use. At a young age, the mean streets of Englewood taught him some of the hardest lessons of life and loss. Those significant factors bring NATHANIEL McELORY before this Court.

NATE can and will strive to become a productive member of society. He has the intelligence, will, and family support to do so. By committing himself to his son, eliminating drugs from his life, and pledging to steer clear of criminal activity, he will be able to someday recover from the damage he has done to his own life and find a productive way to contribute to the community.

WHEREFORE, Defendant, NATHANIEL McELROY respectfully prays this Honorable Court sentence him to a sentence of 21 months on each count consecutively for a total of **42 months** plus a term of supervised release or for a sentence below the guideline range and for any such other relief as this Court deems just.

                                                Respectfully submitted,

                                                By:

                                                /s/Joshua B. Kutnick
                                                Attorney for the Defendant

**JOSHUA B. KUTNICK**
**900 WEST JACKSON BLVD., STE. 5W**
**CHICAGO, IL 60607**
**312-441-0211**
**jkutnick@gmail.com**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| vs. | ) | No. 17 CR 000576-1 |
| | ) | |
| **NATHANIEL McELROY,** | ) | Honorable Jorge Alonso |
| **Defendant** | ) | |

**NOTICE OF FILING AND CERTIFICATE OF SERVICE**

I, Joshua B. Kutnick, do state that I served all parties in the above captioned matter with my Sentencing Memorandum and this Certificate electronically with the Clerk of the District Court for the Northern District of Illinois.

By:

/s/ Joshua B. Kutnick
_____
Joshua B. Kutnick Attorney at Law

**JOSHUA B. KUTNICK**
**900 WEST JACKSON BLVD., SUITE 5W**
**CHICAGO, IL 60607**
**312-441-0211**
**joshua@kutnicklaw.com**

12